IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KALAKA NUI, INC., a Hawaii corporation,<br><br>              Plaintiff,<br><br>    vs.<br><br>ACTUS LEND LEASE, LLC, et al.,<br><br>              Defendants.<br>_____ | CIVIL NO. 08-00308 SOM/LEK<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; ORDER DENYING AS MOOT DEFENDANTS' MOTION TO EXCLUDE MATERIALS ATTACHED TO OPPOSITION; ORDER TO SHOW CAUSE WHY COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO PROPERLY PLEAD DIVERSITY JURISDICTION |

ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION; ORDER DENYING AS MOOT DEFENDANTS'
MOTION TO EXCLUDE MATERIALS ATTACHED TO OPPOSITION;
ORDER TO SHOW CAUSE WHY COMPLAINT SHOULD NOT BE DISMISSED FOR
<u>FAILURE TO PROPERLY PLEAD DIVERSITY JURISDICTION</u>

I.       <u>INTRODUCTION.</u>

        Plaintiff Kalaka Nui, Inc., alleges that Defendant Actus Lend Lease, LLC, failed to pay Kalaka Nui for various construction-related services and for certain goods.  Actus moves for judgment on the pleadings, arguing that, because Kalaka Nui's work occurred on Hickam Air Force Base, the federal enclave doctrine precludes all of Kalaka Nui's state-law causes of action.  According to Actus, Kalaka Nui can only assert federal-law claims, not the state-law claims asserted in the Complaint.  Actus's argument is both legally and factually wrong.  Actus's motion for judgment on the pleadings (Doc. No. 48) is therefore denied.  Because this court does not consider the exhibits

attached to Kalaka Nui's opposition, the court denies as moot Actus's companion motion to exclude consideration of those exhibits (Doc. No. 55). Both motions are denied without a hearing pursuant to Local Rule 7.2(d).

Because the Complaint appears to insufficiently plead diversity jurisdiction, however, Kalaka Nui is ordered to show cause why its Complaint should not be dismissed.

II.     LEGAL STANDARD.

Actus seeks judgment on the pleadings on the ground that this court lacks subject matter jurisdiction. The court examines this motion, brought under Rule 12(c) of the Federal Rules of Civil Procedure, as raising concerns governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure, which covers motions to dismiss for "lack of subject matter jurisdiction." Under Rule 12(h)(3) of the Federal Rules of Civil Procedure, this court "must dismiss the action" when it "determines at any time that it lacks subject matter jurisdiction."

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may either attack the allegations of the complaint as insufficient to confer subject matter jurisdiction, or attack the existence of subject matter jurisdiction in fact. Safe Air for Everyone v. Meyer 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack, the challenger

asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.").  Actus's motion is a facial attack on this court's subject matter jurisdiction.

Because Actus's motion attacks the allegations of the Complaint as insufficient to confer subject matter jurisdiction, the court limits its analysis to the allegations contained in the Complaint, the documents attached to the Complaint, and any facts that the court can take judicial notice of, taking all allegations of material fact as true and construing them in the light most favorable to the nonmoving party. Rimac v. Duncan, 2009 WL 631616, *1 (9th Cir. March 10, 2009) ("In a facial attack, the court must consider whether the complaint, on its face, sufficiently alleges state action, presuming all allegations to be true."); Doe v. See, 557 F.3d 1066, 1073 (9th Cir. 2009) (noting that, when examining as facial attack on subject matter jurisdiction under Rule 12(b)(1), courts assume the plaintiffs' factual allegations to be true and draw all reasonable inferences in the plaintiffs' favor); Samco Global Arms, Inc. v. Arita, 395 F.3d 1212, 1214 n.4 (11th Cir. 2005) ("We use the same standard as the district court in analyzing a facial attack on jurisdiction, and therefore accept the

well-pleaded allegations of the complaint as true and limit our inquiry to the complaint and the documents attached thereto."); Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000) ("In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."); Maciel v. Rice, 2007 WL 4525143, *2 (E.D. Cal. Dec. 18, 2007) ("In a facial attack, subject matter jurisdiction is challenged solely on the basis of the allegations contained in the complaint (along with any undisputed facts in the record or of which the court can take judicial notice.)").

III.     BACKGROUND.

This court takes judicial notice of Hickam's status as a military base located on Oahu, Hawaii. See Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). The airfield at Hickam was dedicated in honor of Lt. Col. Horace Meek Hickam in May 1935. Id.; see Hickam Air Force Base Home Page, available at http://www2.hickam.af.mil/library/newcomersinformation/index.asp.

This court also takes judicial notice of Hawaii's statehood in 1959. Fed. R. Evid. 201(b); see An Act to Provide

for the Admission of the State of Hawaii into the Union, Pub. L. No. 86-3, 73 Stat. 4, 5 (March 18, 1959) ("Admission Act").

Kalaka Nui's Complaint alleges that Kalaka Nui is a Hawaii corporation, and that Actus is a Delaware corporation with headquarters and a principal place of business in Tennessee. Complaint ¶¶ 1-2.

There appears to be no dispute that Actus is a civilian contractor hired by the United States Air Force. Kalaka Nui alleges that, in 2003, the United States Air Force selected Actus as the preferred developer for the design, construction, renovation, and maintenance of homes at Hickam. Id. ¶ 6.

Kalaka Nui alleges that, on or about July 31, 2005, it entered into a subcontract with Actus under which Kalaka Nui was to provide hauling services at Hickam. Kalaka Nui says it provided those services, billed Actus, but has not been paid. See Complaint ¶¶ 10-13.

Kalaka Nui further alleges that, on or about August 24, 2006, it contracted with Actus to provide demolition and related work at Hickam. Kalaka Nui claims that, pursuant to this agreement, it delivered 2,888.65 tons of 3B Fine Material to Actus, for which is has not been paid. Kalaka Nui also says that, pursuant to this agreement, Actus was supposed to have directed other subcontractors to purchase material from Kalaka Nui, but did not. See Complaint ¶¶ 14-20.

According to Kalaka Nui, on June 24, 2008, Actus sent it an improper notice of default for Kalaka Nui's work at Hickam. Kalaka Nui says that, although it was ready, willing, and able to perform the work it had contracted to do, Actus did not tell it to start working and instead had another company do the work. See Complaint ¶¶ 21-28.

Kalaka Nui further alleges that, on or about November 3, 2006, it contracted with Actus for a project at Hickam to furnish and install equipment and materials for 1) a site clearing, 2) earthwork for utilities, 3) a storm drainage system, 4) a sanitary sewer system, and 5) water distribution. Kalaka Nui alleges that it has not been paid for the work it did and that Actus improperly awarded change orders to another subcontractor. See Complaint ¶¶ 29-33.

Kalaka Nui says that, in or about September 2006, it entered into two contracts with Actus to perform demolition and related work at Hickam. Kalaka Nui claims that, having not been paid under the earlier contract, it was unable to perform on these two contracts and accordingly lost what would have been profits. See Complaint ¶¶ 34-39.

Finally, Kalaka Nui alleges that, in or around October 2007, it contracted with Actus to perform civil and related work on a project at Hickam. Kalaka Nui alleges that, although it was given the contracts, Actus's Vilma Atiburcio asked for the

contracts back so that she could make changes to some of their schedules. Kalaka Nui says that Actus then failed to return the contracts, awarding them instead to another subcontractor. See Complaint ¶¶ 40-48.

Kalaka Nui's Complaint asserts state law causes of action for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), intentional and/or negligent misrepresentation (Count III), tortious interference with prospective economic advantage (Count IV), unjust enrichment (Count V), quantum meruit (Count VI), promissory estoppel (Count VII), and fraud (Count VIII).

IV.     ANALYSIS.

    A.     The Motion to Dismiss Is Denied.

Actus seeks dismissal of Kalaka Nui's Complaint, arguing that, under section 16(b) of the Admission Act, the federal government reserved exclusive jurisdiction to legislate regarding federal enclaves in Hawaii such as Hickam. Actus claims, "Only federal law applies on such enclaves . . . to govern all civil acts, deeds, and disputes that arise from activities thereon." See Motion for Judgment on the Pleadings at 2 (March 13, 2009).

Section 16(b) of the Admission Act provides:

> Notwithstanding the admission of the State of Hawaii into the Union, <u>authority is reserved in the United States, subject to the proviso hereinafter set forth, for the</u>

<u>exercise by the Congress of the United States of the power of exclusive legislation</u>, as provided by article I, section 8, clause 17, of the Constitution of the United States, <u>in all cases whatsoever over such tracts or parcels of land as, immediately prior to the admission of said State, are controlled or owned by the United States and held for Defense or Coast Guard purposes</u>, whether such lands were acquired by cession and transfer to the United States by the Republic of Hawaii and set aside by Act of Congress or by Executive order or proclamation of the President or the Governor of Hawaii for the use of the United States, or were acquired by the United States by purchase, condemnation, donation, exchange, or otherwise: *Provided*, (i) That the State of Hawaii shall always have the right to serve civil or criminal process within the said tracts or parcels of land in suits or prosecutions for or on account of rights acquired, obligations incurred, or crimes committed within the said State but outside of the said tracts or parcels of land; (ii) <u>that the reservation of authority in the United States for the exercise by the Congress of the United States of the power of exclusive legislation over the lands aforesaid shall not</u> operate to prevent such lands from being a part of the State of Hawaii, or to <u>prevent the said State from exercising over or upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority</u>; and (iii) that such power of exclusive legislation shall vest and remain in the United States only so long as the particular tract or parcel of land involved is controlled or owned by the United States and used for Defense or Coast Guard purposes: *Provided, However*, That the United States shall continue to have sole and exclusive jurisdiction over such military installations as have been heretofore or hereafter

>        determined to be critical areas as delineated
>        by the President of the United States and/or
>        the Secretary of Defense.

Pub. L. No. 86-3, 73 Stat. 4, 11-12 (March 18, 1959) (emphasis added).

Actus argues that, under the Forts and Arsenals Clause of the United States Constitution, the United States Congress has the exclusive power to legislate regarding federal military enclaves.  See U.S. Const. art. I, § 8, cl. 17.  Actus asserts that section 16(b) of the Admission Act specifically incorporates the Forts and Arsenals Clause to provide the United States Congress with exclusive jurisdiction to legislate regarding Hickam.  Actus, however, ignores the "proviso" found in section 16(b) of the Admission Act.  As described in more detail below, that "proviso" provides Hawaii with concurrent jurisdiction so long as Hawaii's laws are not inconsistent with federal law.

Citing Kelly v. Lockheed Martin Services Group, 25 F. Supp. 2d 1, 3 (D.P.R. 1998), Actus says that, because Hickam existed prior to Hawaii's becoming a state in 1959, "there is no possibility of concurrent jurisdiction" with Hawaii.  This court disagrees.  In Kelly, the district court noted that a federal enclave may be created in three ways.  First, a federal enclave--"a portion of land over which the United States government exercise[s] exclusive jurisdiction"--may result from the United States' purchase of land with a state's consent and the state's

transfer of complete jurisdiction to the United States.  Second, the United States may purchase land over which a state exercises jurisdiction and the state may then cede some or all of its jurisdiction to the United States.  Third, the United States may reserve jurisdiction over portions of a state when the state enters the union.  Kelly, 25 F. Supp. 2d. at 3.

Kelly also explained that there are three theories regarding the applicability of state law on federal enclaves.  Under the first, when a federal enclave is established, the local law in effect at the time of cession continues to apply until it is abrogated by federal law.  That local law, in effect, becomes federal law unless Congress specifically makes a provision for the application of laws passed by Congress.  "Under this theory, the status quo at the time the federal enclave became an enclave is maintained no matter how much time has passed since the creation of the enclave, unless Congress acts to change the status quo."  Kelly, 25 F. Supp. 2d at 4 (citing James Stewart & Co. v. Sadrakula, 309 U.S. 94, 100 (1940)).  Under the second theory, "subsequent state regulatory changes consistent with the state law in place at the time of cession are applicable within a federal enclave."  Kelly, 25 F. Supp. 2d at 4 (citing Paul v. United States, 371 U.S. 245, 269 (1963)).  The law "is not frozen in time as of cession, but continues to develop as the state develops the law."  Id.  Under the third theory, "all state law

rules of the state in which the enclave exists are applicable within the federal enclave unless they interfere with the federal government's jurisdiction." Kelly, 25 F. Supp. 2d at 4 (citing Howard v. Commissioners of the Sinking Fund of the City of Louisville, 344 U.S. 624 (1953)). Given the circumstances presented in this case, this court need not determine which of these theories applies here.

In Goodyear Atomic Corp. v. Miller, 486 U.S. 174, 180 (1988), the Supreme Court noted, "It is well settled that the activities of federal installations are shielded by the Supremacy Clause from direct state regulation unless Congress provides 'clear and unambiguous' authorization for such regulation." Congress provided such clear and unambiguous authorization in the Admission Act. Although section 16(b) of the Admission Act gave Congress exclusive authority to legislate over military bases in Hawaii such as Hickam, that authority was "subject to the proviso hereinafter set forth." According to that proviso, the power of "exclusive legislation"[1] over military bases in Hawaii "shall not

---

[1] The Supreme Court has recognized that this "exclusive legislation" is synonymous with "exclusive jurisdiction." See James v. Dravo Contracting Co., 302 U.S. 134, 141 (1937) ("Clause 17 provides that Congress shall have power 'to exercise exclusive Legislation' over 'all Places purchased by the consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings.' 'Exclusive legislation' is consistent only with exclusive jurisdiction."); accord Willis v. Craig, 555 F.2d 724, 725 n.3 (9th Cir. 1977) ("'Exclusive legislation' in clause 17 has been construed to mean exclusive 'jurisdiction' in the

. . . prevent [Hawaii] from exercising over or upon such lands, concurrently with the United States, any jurisdiction whatsoever which it would have in the absence of such reservation of authority and which is consistent with the laws hereafter enacted by the Congress pursuant to such reservation of authority." Pub. L. No. 86-3, 73 Stat. 4, 11-12 (March 18, 1959). Actus is simply incorrect in its assertion that Hawaii law is inapplicable on Hickam. The Admission Act clearly provides that Hawaii has concurrent jurisdiction over such military bases so long as state jurisdiction is consistent with post-Admission Act laws enacted by the United States Congress.

The legislative history of section 16(b) supports this conclusion. A Senate Report from 1959 indicates that, "until Congress acts to exercise its reserved power," Hawaii is authorized "to exercise all of its other usual functions in the area." S. Rep. No. 80, 1st Sess. (1959), reprinted in 1959 U.S.C.C.A.N. 1346, 1365. The Hawaii Intermediate Court of Appeals has interpreted this legislative history as "indicat[ing] that it was the intent of Congress to accord to the state concurrent jurisdiction with the federal government over lands in Hawaii owned or controlled by the federal government at the time of Hawaii's admission as a state." State v. Thomas, 8 Haw. App. 497, 503, 810 P.2d 668, 671 (Ct. App. 1991). This court agrees

---

sense of exclusive sovereignty.").

that Hawaii has concurrent jurisdiction over private claims arising on Hickam.

      The Ninth Circuit has recognized that a negligence claim arising on a federal military base may arise under both state and federal law. In <u>Willis v. Craig</u>, 555 F.2d 724 (9th Cir. 1977), the plaintiff was injured while a civilian employee at the Concord Naval Weapons Station. The Ninth Circuit examined whether it had subject matter jurisdiction with respect to Willis's negligence claim, noting that, even though a state court might have concurrent jurisdiction over the negligence claim, federal courts might have federal question jurisdiction arising from enclave jurisdiction. <u>See</u> <u>Willis</u>, 555 F.2d at 726 n.4. The Ninth Circuit therefore recognized that what might be traditionally thought of as a state-law claim might be asserted in federal court based on both federal question and diversity jurisdiction. That is, if a state has concurrent jurisdiction with respect to a negligence claim such that the claim could be brought in state court, that claim may be asserted under this court's diversity jurisdiction. <u>See</u> 28 U.S.C. § 1332. On the other hand, if a state law became federal law when state land was ceded to the federal government, a claim could also be asserted under this court's federal question jurisdiction. <u>See</u> 28 U.S.C. § 1331.

Actus presents no authority indicating that allowing a subcontractor's state-law tort and contract claims against a contractor for work done or to be done at Hickam is inconsistent with federal law. Accordingly, Actus fails to establish that this court lacks subject matter jurisdiction over Kalaka Nui's claims.

The court is unpersuaded by Actus's case citations regarding the applicability of the federal enclave doctrine. Actus has not demonstrated that any of those cases involved language similar to that of the Admission Act.

In Stiefel v. Bechtel Corp., 497 F. Supp. 2d 1138 (S.D. Cal. 2007), for example, the district court applied the federal enclave doctrine to bar state-law claims relating to Camp Pendleton, which was land the federal government had purchased from California. The district court reasoned that, under Article I, section 8, clause 17 of the United States Constitution, Congress has the power of exclusive legislation over all places purchased from a state. The district court noted that no area would be left without a developed legal system for private rights if the state laws applicable to the land at the time of transfer continued in effect to the extent not abrogated by Congress. In essence, those state laws became federal laws governing the enclave. Stiefel is distinguishable because nothing in that case indicates that Congress intended to provide concurrent

jurisdiction over Camp Pendleton.  Instead, the state law became federal law.  In the present case, the federal enclave doctrine does not arise out of the sale of Hickam from the State of Hawaii to the federal government.  It arises out of the Admission Act, which granted concurrent jurisdiction to Hawaii, so long as Hawaii's laws are not inconsistent with federal law.

<u>Osburn v. Morrison Knudson Corp.</u>, 962 F. Supp. 1206, 1208 (E.D. Mo. 1997), also cited by Actus, is similarly distinguishable.  Nothing in that case indicates that, when the land was transferred by Missouri to the federal government, concurrent jurisdiction was retained by Missouri.

Not only is Actus's motion legally insufficient to establish a lack of subject matter jurisdiction, it is factually insufficient as well.  Although Actus is bringing a facial challenge to this court's subject matter jurisdiction, it is asking the court not to read Kalaka Nui's allegations in the light most favorable to Kalaka Nui, the nonmoving party.  Actus's motion fails because it assumes that all of the events underlying the Complaint happened on Hickam.  Interpreting the facts alleged in the light most favorable to Kalaka Nui, however, the court finds it unclear whether the contract and tort claims arose off the military base.  The Complaint alleges, for example, that Actus's principal place of business is in Tennessee.  Actus has made no showing that, if decisions and actions occurred in

15

Tennessee, rather than on Hickam, the federal enclave doctrine still applies.

        B.    Order to Show Cause

Kalaka Nui's Complaint states that jurisdiction in this court is based on diversity jurisdiction, not federal question jurisdiction. For diversity purposes, an LLC is a citizen of every state of which its owners/members are citizens. Johnson v. Columbia Props. Anchorage, LP, 437 F.3d 894, 899 (9th Cir. 2006) ("like a partnership, an LLC is a citizen of every state of which its owners/members are citizens"). Although Kalaka Nui's Complaint alleges "complete diversity," see Complaint ¶ 4, it does not allege the citizenship of every owner/member of Actus, instead alleging only that Actus is

> a limited liability company formed under the laws of the State of Delaware, and registered to do business in the State of Hawaii, as a Foreign Limited Liability Company for the purpose of the construction of military housing. Upon information and belief, Actus' headquarters and principal place of business are located in the State of Tennessee.

Complaint ¶ 2.

Because Kalaka Nui does not appear to have properly alleged diversity of citizenship, the court orders Kalaka Nui to show cause why its Complaint should not be dismissed. No later than June 5, 2009, Kalaka Nui may file a response to this order to show cause. Actus may file a position statement regarding this order to show cause no later than June 15, 2009. A hearing

will be held on the order to show cause on July 6, 2009, at 9 a.m.  Kalaka Nui may cause this order to show cause to become moot by filing an Amended Complaint that makes jurisdiction clear.  Kalaka Nui is granted leave to file and such an Amended Complaint no later than June 5, 2009

V.      CONCLUSION.

For the foregoing reasons, the court denies Actus's motion to dismiss for lack of subject matter jurisdiction. Because the court does not examine evidence outside the four-corners of the Complaint in deciding this motion, the court also denies as moot Actus's motion to strike the exhibits attached to the Opposition.

As described above, Kalaka Nui is ordered to show cause why the Complaint should not be dismissed for failure to properly plead diversity jurisdiction.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, May 5, 2009.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Kalaka Nui, Inc. v. Actus Lend Lease, LLC, et al., Civ. No. 08-308 SOM/LEK; ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; ORDER DENYING AS MOOT DEFENDANTS' MOTION TO EXCLUDE MATERIALS ATTACHED TO OPPOSITION; ORDER TO SHOW CAUSE WHY COMPLAINT SHOULD NOT BE DISMISSED FOR FAILURE TO PROPERLY PLEAD DIVERSITY JURISDICTION